ERIK HERRIEN,

      Plaintiff,

v.                                    Case No.: 2:11cv560

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

The plaintiff, Erik Herrien, brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under the Social Security Act.

This action was referred to a United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed December 20, 2011. For the reasons expressed herein, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED to the extent it seeks reversal and remand of the Commissioner's decision; Defendant's Motion for Summary Judgment be DENIED; and the final decision of the Commissioner be VACATED and REMANDED for proceedings and analysis consistent with this Report.

## I. PROCEDURAL BACKGROUND

On May 28, 2009, Erik Herrien protectively filed an application for disability insurance benefits alleging an onset of disability as of June 4, 2009, due to a history of back problems. R.[1] 9,

---

[1] "R." refers to the certified administrative record of proceedings relating to this case (ECF No. 7), filed under seal pursuant to Local Civil Rule 7(C)(1).

111, 172. At some point in time, but not later than October 5, 2009, Mr. Herrien included foot problems as a component of his disability. R. 185-192. Mr. Herrien's application was denied by the Social Security Administration initially on January 27, 2010, and on reconsideration on May 14, 2010. R. 67-71, 76-82.

Mr. Herrien requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration, which was held on February 10, 2011. R. 17-34, 83. Mr. Herrien was represented by his attorney, Robert W. Gillikin, II, at the hearing. R. 17-34. Mr. Herrien and vocational expert Robert Edwards testified at the hearing. *Id.*

On April 7, 2011, the ALJ issued a decision. R. 9-16. The ALJ found that Mr. Herrien was not entitled to disability insurance benefits because he was not under a disability as defined in the Social Security Act. R. 9, 16. The ALJ found Mr. Herrien capable of performing a limited range of sedentary work and that, considering Mr. Herrien's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the local and national economies that he can perform. R. 12-16. On May 18, 2011, Mr. Herrien requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review (the "Appeals Council"). R. 107-109. The Appeals Council denied review on August 26, 2011. R. 1-5. This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g). 20 C.F.R. § 404.981.

Mr. Herrien brought this action seeking judicial review of the decision of the Commissioner denying his claim for disability insurance benefits. Mr. Herrien filed a complaint on October 18 2011, which the defendant answered on December 19, 2011. ECF Nos. 3, 5. Mr. Herrien filed a motion for summary judgment with memorandum in support on February 29, 2012. ECF Nos. 9-10. The defendant filed a motion for summary judgment with memorandum in support on March 30,

2012. ECF Nos. 11-12. Mr. Herrien filed a reply to the defendant's motion for summary judgment

on April 13, 2012. ECF No. 13. After this case became ripe for review, Mr. Herrien filed a Motion

to Supplement the Record with New Case Law, asking this Court to consider the recently decided

Fourth Circuit decision in in *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir. 2012).

ECF No. 14. The Commissioner did not object to the Court considering this authority, but rejected

the assertion that the decision was apposite. ECF No. 16. As neither counsel in this case has

indicated special circumstances requiring oral argument in this matter, the case is deemed submitted

for decision based on the motion papers and memoranda. *See* Local Civil Rule 7(J).

## II. FACTUAL BACKGROUND

At the time of his alleged disability onset date, Mr. Herrien was forty-two years old; he was

forty-four years old at the time the ALJ issued his decision. R. 6, 111. Mr. Herrien has a high

school education. R. 21, 179. He served in the military between July 14, 1986 and April 16, 1991.

R. 111. His past relevant work includes employment as a corrections officer and a warehouse

material handler supervisor. R. 15, 21-23, 211. According to vocational expert testimony, each of

these occupations is classified as semi-skilled jobs which are performed at the medium exertional

level.[2] R. 15, 32.

---

[2] Under the Social Security Act, all occupations are classified as "unskilled," "semi-skilled," or "skilled" work. *See* 20 C.F.R. § 404.1568. Unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Semi-skilled work requires

> some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary . . . .

On June 4, 2009, Mr. Herrien ceased working due to his alleged disability. R. 9, 111, 172, 181.

## III. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner held that Mr. Herrien was not under a disability within the meaning of the Social Security Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam); *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1453 (citing *King v. Califano*, 599 F.2d 497, 599 (4th Cir. 1979)). In addition, the Commissioner has a duty "to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citations omitted). The Court does not conduct a *de novo* review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to

---

20 C.F.R. § 404.1568(b). Skilled work requires the use of judgment in "dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Mr. Herrien is disabled, but whether the Commissioner's finding that Mr. Herrien is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

## IV. THE ALJ'S DECISION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Social Security Act as the

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(a). To meet this definition, the claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).
[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

disabled, which is set forth at 20 C.F.R. § 404.1520. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ must determine in sequence:

(1)     Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working). If so, the claimant is not disabled and the inquiry is halted.

(2)     Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry is halted.

(3)     Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant is disabled and the inquiry is halted.

(4)     Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5)     Whether the claimant is able to perform any other work considering both his residual functional capacity[5] and his vocational abilities. If so, the claimant is not disabled.

In this case, the ALJ reached the fifth step of the sequence, at which point he determined that Mr. Herrien was not disabled. The ALJ first determined that Mr. Herrien had not engaged in substantial gainful activity at any time since June 4, 2009, the alleged onset date of disability. R. 11. The ALJ next found in step two that Mr. Herrien had severe impairments: status post triple arthrodesis of the left foot; and status post L5-S1 artificial disc replacement. *Id.*

At step three, the ALJ found that Mr. Herrien did not have an impairment or combination of impairments listed in, or medically equal to, one of the listed impairments in Appendix 1. R. 12. He

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1).

found that Mr. Herrien did not meet the listing at 1.02 for a major dysfunction of joint, specifically

the ankle, because a corrective surgery designed to remove screws in the left ankle and foot and

reduce swelling and increase range of motion resulted in sufficient improvement in Mr. Herrien's

condition that, by December 2010 he had no evidence of significant ankle ligament injury or other

active inflammation or tear. *Id.* The ALJ found that Mr. Herrien did not meet the listing at 1.03

because his ability to ambulate effectively was not significantly impaired as defined by the criteria.

*Id.* Finally, the ALJ found that Mr. Herrien did not meet the listing for 1.04 because a September

2008 myelogram of Mr. Herrien's lumbar spine did not show critical central canal stenosis, and a

January 2009 EMG was normal. *Id.*

## B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Mr. Herrien's residual functional capacity

("RFC"), based on the ALJ's evaluation of the evidence, including testimony by the plaintiff, the

findings of treating and examining physicians and podiatrists, the findings of a consultative reviewer,

and the state agency's disability determinations, rendered by non-examining physicians. R. 13-15.

Based on the evidence as a whole, the ALJ determined that Mr. Herrien retained the RFC to perform

a limited range of sedentary work. *Id.* The ALJ found Mr. Herrien capable of performing:

> a limited range of sedentary work[6] as defined in 20 CFR 404.1567(a),
> except that he can only occasionally bend, stoop and crouch; and
> perform jobs in which he can alternate sitting and standing throughout
> the day.

R. 13.

---

[6] "Sedentary work" is defined by the regulations as work "which involves lifting no more than 10
pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking
and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing
are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The
regulations define additional categories of "light work," "medium work," "heavy work," and "very
heavy work"——each successive category embracing more physically demanding work than the
preceding one. *See id.* § 404.1567(b)-(e).

In reaching a conclusion about Mr. Herrien's RFC, the ALJ considered and weighed the evidence of record, including the opinions of Dr. William Grant, the treating podiatrist, Dr. Mark Kerner, the treating orthopedic surgeon, Dr. Edwin Cruz, a consultative reviewer, and Drs. Patricia Staehr and Leopold Moreno, state agency physicians who performed disability determination reviews. R. 13-15. Dr. Grant had provided a medical source statement in February 2010 that, because of surgery to his left foot, Mr. Herrien could sit for one hour, stand and/or walk for 20 minutes in an eight hour day, and only occasionally lift 10 pounds, balance, stoop, bend and crawl, but never crouch or kneel. R. 13-14. The ALJ gave little weight to Dr. Grant's opinion regarding Mr. Herrien's functional limitations because, according to the medical evidence, Mr. Herrien subsequently underwent successful corrective surgery in April 2010, after the medical statement was proffered. R. 14. The ALJ found that, by December 2010, Mr. Herrien had full range of motion of his left ankle, some discomfort, and diagnostic testing showed no evidence of ligament injury, only mild plantar fasciitis, and mild Achilles tendinopathy, without evidence of active inflammation or tear. *Id.*

Dr. Kerner proffered a medical source statement in February 2010 and a letter opinion in July 2010 that Mr. Herrien's back disorder was disabling. R. 362-365, 422. The ALJ tracked Mr. Herrien's condition through Dr. Kerner's medical records,[7] and found that Dr. Kerner's conclusion that Mr. Herrien was permanently disabled did not comport with Dr. Kerner's own progress notes. R. 14. Specifically, the ALJ noted, *inter alia*, the following record entries: a) in October 2008 Mr. Herrien had a normal gait, strength at 5/5 bilaterally, normal range of motion, normal sensation throughout, reflexes at +2 and symmetric throughout, was "very functional" and able to conduct activities of daily living; b) in January 2009 Mr. Herrien had a normal EMG, pain controlled at an

---

[7] The ALJ mistakenly attributed the October 28, 2008 consultation by Dr. Tina Rodrigue, wherein she found Mr. Herrien suffered from "failed back syndrome," to Dr. Kerner. R. 14, 281-283.

acceptable level, and he was limited to light duty; c) in April 2009 the note was limited to Mr.

Herrien's neck pain and Dr. Kerner expressed caution about treating the problem too aggressively; d)

in June 2009 Mr. Herrien demonstrated good strength, sensation and reflexes, his back was stable

and he no longer needed light duty limitations; e) in March 2010 Mr. Herrien appeared stable and

was to return on an as-needed basis; f) in July 2010, Dr. Kerner wrote that Mr. Herrien was

permanently disabled but there had been no reported change in Mr. Herrien's treatment or condition,

nor objective tests indicating a change in condition.  *Id.*  Based on these findings in the medical

record, the ALJ accorded Dr. Kerner's opinion regarding Mr. Herrien's disability little weight.  *Id.*

The ALJ next considered Dr. Cruz's medical source statement reflected in interrogatories

based on his review of the evidence.  *Id.*  The ALJ disagreed with Dr. Cruz's opinions that Mr.

Herrien met the listing requirements of 1.02, 1.03 and 1.04 based on the reasoning the ALJ had

previously outlined.  *Id.*

Pursuant to Social Security Ruling (SSR) 96-6p, the ALJ considered the state agency

findings of fact about the nature and severity of Mr. Herrien's impairment, conducted by medical

consultants who are also expert in Social Security disability programs, as the medical opinions of

non-examining medical sources.  R. 14.  In its Physical Residual Functional Capacity Assessment,

completed by one medical consultant on January 26, 2010, and affirmed on reconsideration by

another medical consultant on May 14, 2010, Disability Determination Services ("DDS"), a division

of the Virginia Department of Rehabilitative Services, found Mr. Herrien capable of standing or

walking up to two hours out of an eight-hour workday, capable of sitting about six hours out of an

eight-hour workday, and capable of lifting or carrying up to ten pounds frequently and up to 20

pounds occasionally.  R. 43, 57.  DDS found additional limitations on Mr. Herrien's ability to

perform work in which he would be required to climb ramps or stairs, stoop, kneel, crouch, or crawl

more than occasionally; DDS also found that Mr. Herrien was incapable of performing any work that might require him to climb ladders, ropes, or scaffolds at any time. R. 44, 57-58. DDS found limitations on Mr. Herrien's ability to work under conditions in which he would see exposure to hazards such as dangerous machinery or unprotected heights. R. 44, 58. DDS found no other physical restrictions on Mr. Herrien's ability to work. R. 45-46, 57-58. The ALJ afforded the DDS opinion "significant weight." R. 14.

The ALJ also concluded that, while Mr. Herrien's medically determinable impairments could reasonably be expected to cause symptoms, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible" to the extent they were inconsistent with the RFC assessment. R. 13. In sum, the ALJ based his RFC assessment on the objective medical testing, Dr. Kerner's and Dr. Grant's progress notes, and the DDS consultant's medical opinion. R. 15.

## C. Past Relevant Work

The ALJ found in step four that Mr. Herrien was not capable of performing the functional demands of any past relevant work, as it involved semi-skilled work at the medium exertional level, which exceeded the limited range of sedentary work Mr. Herrien was now capable of performing. R. 15.

## D. Adjustment to Other Work

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform

consistent with his RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found, at the time of the alleged disability onset date, that Mr. Herrien was forty-two years old, which is defined as a "younger individual age 18-44," with a high school education and the ability to communicate in English. R. 15. The ALJ noted that Mr. Herrien's transferability of job skills was not at issue pursuant to the table rules set forth in the Medical Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2. *Id.* According to the testimony given by a vocational expert, a significant number of jobs exist in the local and national economies for an individual of Mr. Herrien's age, education, work experience, and RFC as determined by the ALJ. R. 15-16, 32-34. These jobs include bench assembler (625 positions locally, 120,000 nationally), office clerk (1,110 positions locally, 225,000 nationally), and information clerk (590 positions locally, 118,000 nationally), and. R. 16, 33. Having found a significant number of jobs to which the plaintiff is capable of making a successful adjustment, the ALJ concluded that Mr. Herrien was therefore not disabled. R. 16.

## V. ISSUES CONSIDERED ON APPEAL

Mr. Herrien asserts that the ALJ's decision is not supported by substantial evidence for several reasons. First, he alleges that the ALJ did not afford proper weight to the medical opinions of Dr. Grant, Dr. Kerner and Dr. Cruz. Second, he alleges that the ALJ did not provide sufficient specificity with respect to Mr. Herrien's need for a "sit-stand" option. Finally, Mr. Herrien alleges that the ALJ did not take into account Mr. Herrien's work history and VA disability rating in assessing the claimant's credibility. However, in light of the Fourth Circuit's recent decision in *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir. 2012), the Court will also address the consideration to be given overall to both the VA and OPM disability determinations.

## VI. ANALYSIS

### A. Medical opinion of Dr. Cruz

The plaintiff contends that the ALJ erred in affording little weight to the ultimate opinions of podiatrist Dr. William Grant, and orthopedic surgeon Dr. Mark Kerner that Mr. Herrien was disabled, and the conclusory finding by consultative reviewer Dr. Edwin Cruz that Mr. Herrien met the listing criteria of §§ 1.02, 1.03, and 1.04 in Part 404, Subpart P, Appendix 1. Social Security regulations specifically charge an ALJ with the duty to evaluate medical opinions. 20 C.F.R. § 404.1527. In doing so, the ALJ should give the opinion the weight he or she deems appropriate based a number of factors, including whether a physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, whether the opinion is consistent with the physician's records of treatment, and with the record as a whole. 20 C.F.R. § 404.1527(d)(1)-(4). The Commissioner may discount a treating physician's opinion or accord it significantly less weight if there is a lack of clinical data supporting it, or if there is contrary medical evidence. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." quoting *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)); *Andersen v. Astrue*, 2012 WL 4498920, at *4 (E.D. Va. Sept. 28, 2012) (explaining that the more consistent an opinion is with the record as a whole, the more weight it deserves).

### 1. Dr. Cruz's Opinion

Dr. Cruz was a consultative reviewer engaged by the Commissioner to provide a medical source statement regarding Mr. Herrien. As part of that medical source statement, Dr. Cruz provided medical interrogatory responses as to Mr. Herrien's claimed physical impairments. Dr. Cruz concluded that Mr. Herrien met the requirements for §§ 1.02 (major dysfunction of joint), § 1.3

(reconstructive surgery), and § 1.04 (disorder of spine) in the Listing of Impairments. R. 461. Additionally, however, Dr. Cruz concluded in his medical source statement of ability to do work-related activities that Mr. Herrien was capable of performing those activities which would qualify him to perform at least sedentary work. R. 454-459. Plaintiff, recognizing this contradiction, consequently advocated to the ALJ that Dr. Cruz's opinion "shouldn't be entitled to too much weight since it's internally inconsistent." R. 20. The ALJ concurred, finding that the medical evidence established by the record did not support Dr. Cruz's conclusion that Mr. Herrien met the listings at §§ 1.02, 1.03, and 1.04. R. 14. Had the ALJ adopted Dr. Cruz's conclusion the Mr. Herrien met the listing criteria for the aforementioned sections, the inquiry would have ended there and Mr. Herrien would have been deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii)and (d).

Contrary to Mr. Herrien's claim that the ALJ's rejection of Dr. Cruz's opinion was "unjustified," Plaintiff's Brief in Support of Motion for Summary Judgment at p. 6 ("Plaintiff's Brief"), the ALJ comported with his obligation to evaluate all medical opinions. 20 C.F.R. § 404.1527. The ALJ specifically analyzed the medical record evidence in reaching his conclusion that Mr. Herrien did not meet the listing criteria. As he correctly noted, to meet the criteria for the listing at § 1.02, Mr. Herrien's left foot disorder must be characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or abnormal motion of affected joint, and joint space narrowing, bony destruction, or ankylosis of the affected joint. R. 12. Instead, diagnostic testing of plaintiff's left foot showed no evidence of significant ankle ligament injury, only mild plantar fasciitis, and mild achilles tendinopathy, without evidence of active inflammation or tear. Tr. 12, 465-66.

The ALJ also correctly noted that, to meet the listing at § 1.03, Mr. Herrien's surgical arthrodesis of his left ankle would need to have resulted in an inability to ambulate effectively,

which is generally defined as having insufficient lower extremity functioning to permit independent ambulation without use of a hand-held device that limits the functioning of both upper extremities.[8] R. 12. While the record showed Mr. Herrien used a cane or crutches to ambulate, there was no record evidence that the use of a cane or crutches limited the functioning of both upper extremities. *Id.* Moreover, Dr. Cruz suggested just the opposite when he made his sit/stand/walking findings and answered in the affirmative the interrogatories indicating Mr. Herrien was capable of a) performing activities like shopping; b) travel without a companion for assistance; c) walk a block at a reasonable pace on rough or uneven surfaces; c) use standard public transportation; and d) climb a few steps at a reasonable pace with the use of a single handrail. R. 455, 459. Inasmuch as the only affirmative finding made by Dr. Cruz with respect to § 1.00B2b's definition was that Mr. Herrien needed the assistance of canes or crutches to ambulate, overall there was a lack of clinical data to support Dr. Cruz's opinion that Mr. Herrien met the listing criteria at § 1.03, and affirmative evidence that he did not meet the criteria; therefore, the ALJ did not err is so finding. *See Craig*, 76

---

[8] Specifically, § 1.00B2b defines the inability to ambulate effectively as follows:
  *b. What We Mean by Inability to Ambulate Effectively*
  (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
  (2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

F.3d at 590.

Finally, to meet the listing at § 1.04, the ALJ correctly noted that Mr. Herrien was required to show that his back disorder resulted in a compromise of the nerve root or the spinal cord with evidence of nerve root compression; spinal arachnoiditis; or lumbar spinal stenosis resulting in psuedoclaudication, and that this evidence must be established by findings on appropriate medical imaging, manifested by chronic pain and weakness, and resulting in inability to ambulate effectively, as defined by in § 1.00B2b. R. 13-14. Despite some subjective evidence of chronic pain, the remaining criteria were not established. A September 2008 myelogram of plaintiff's lumber spine showed that there was normal anatomical alignment of the lumbar spine with preservation of vertebral body heights at all levels, only a mild extradural defect ventrally at L3-L4, only mild encroachment upon the central canal, only mild loss of disc height at L3-L4, and no evidence of truncated nerve roots. R. 13, 276. In addition, a January 2009 EMG was normal. R. 426. In light of the evidence, the ALJ did not err in finding that Mr. Herrien did not meet the listing criteria at § 1.04.

As Mr. Herrien's counsel noted, Dr. Cruz's opinions in his medical source statement were inherently contradictory and therefore not "entitled to too much weight." R. 20. Accordingly, the ALJ did not err in affording Dr. Cruz's opinion little weight, and substantial evidence supported the ALJ's finding that Mr. Herrien did not meet the listing criteria for §§ 1.02, 1.03 and 1.04.

## B. ALJ's Specificity Regarding "Sit-Stand" Option

Mr. Herrien contends that the ALJ erred because he did not describe the need for a "sit-stand" option with more specificity. Plaintiff's Brief at pp. 10-13. In his summary of Mr. Herrien's RFC, the ALJ found that Mr. Herrien could "perform jobs in which he can alternate sitting and standing throughout the day." R. 13. Mr. Herrien contends that this constitutes

reversible error under SSR 96-9 because the ALJ did not provide sufficient specificity regarding the frequency with which Mr. Herrien would need to alternate standing or sitting.[9] Plaintiff's Brief at p. 10. Under Mr. Herrien's interpretation of SSR 96-9, the ALJ should have specified "how long he can stand at one time, or sit at one time, [or] what length of intervals it may be ..." *Id.* This Court disagrees with both the proposition that the ALJ did not comport with the requirements of SSR 96-9 and that the degree of particularity advocated by Mr. Herrien was necessary.

First, the ALJ's finding regarding the sit-stand option was not just "a generic finding." Plaintiff's Brief at p. 12. The ALJ gave significant weight to the DDS opinion that Mr. Herrien had the RFC to perform sedentary work in which he could, *inter alia*, sit for six hours, and stand and/or walk about two hours in an eight hour day. R. 14, 57. Hence, the ALJ was specific in his finding that Mr. Herrien could stand and walk for up to two hours, and sit for up to six hours, during the course of an eight hour work day.

Moreover, in his examination of the vocational expert at the administrative hearing, after confirming that the expert had reviewed the vocational exhibits, in a hypothetical question the ALJ asked the expert to assume "that the individual would need to be able to alternate between sitting and standing on a periodic basis ..." R. 32-33. Such a hypothetical has been deemed by courts to infer an "at-will" sit-stand option requiring no greater specificity. *See, e.g. Thompson v. Astrue,* 2011 WL 3489671 at *2; 442 Fed. App'x 804, 807 (4th Cir. 2011) (finding that an at-will sit/stand option required no greater specificity under SSR 96–9p); *Evans v. Astrue*, 2012 WL 6204219 at *8 (W.D.N.Y. Dec. 12, 2012); *Thompson v. Astrue*, 2012 WL 5182890 at *5 (E.D.Pa. Oct. 18, 2012); *Wright v. Astrue*, 2012 WL 182167, at *8 (M.D.N.C. Jan. 23, 2012)

---

[9] SSR 96-9 provides, in pertinent part: "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."

(ALJ's inclusion in hypothetical of "sit/stand" option sufficient because its "at will" nature was reasonably implied); *Pierpalio v. Astrue*, 2011 WL 7112913, at *6 (D.S.C. Dec. 15, 2011) ("at will" indication sufficient to satisfy requirement of frequency). *Magee v. Astrue*, No. 05–CV–413, 2008 WL 4186336, at *5 (N.D.N.Y. Sept. 9, 2008). Accordingly, the ALJ comported with the requirements of SSR 96-9.

## C. <u>Disability Rating from the VA and OPM</u>

The ALJ found that Mr. Herrien's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they [were] inconsistent with the [ALJ's] residual functional capacity assessment." R. 13. Mr. Herrien contends that the ALJ erred in not taking into account, *inter alia*, his service-connected disability rating from the U.S. Department of Veterans Affairs. Plaintiff's Brief, at p. 13-15. A careful review of the record shows that Mr. Herrien is correct.

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop arguments both for and against granting benefits and the Council's review is similarly broad." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). Despite the fact that Mr. Herrien did not specifically offer his VA disability determination into evidence, sufficient information was included in the record to raise the issue and trigger the ALJ's duty to develop the record. Because he failed to do so, the Court recommends that the case be remanded so that the Commissioner can explore all relevant facts regarding both the VA's and OPM's disability determinations. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) ("This circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."); *Allen v.*

*Astrue*, 843 F.Supp.2d 920, 935-936 (S.D. Ind. 2011) (failure of ALJ to discuss claimant's

testimony that he had a VA disability rating was reversible error). Moreover, pursuant to the

Fourth Circuit's recent holding in *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir.

2012), the ALJ must give substantial weight to the VA's and OPM's disability determinations

unless the record clearly demonstrates that a deviation is appropriate. Since the record is silent

as to what, if any, weight the ALJ gave to either of these other federal agency's disability

determinations, the case should be remanded.

Prior to the administrative hearing, Mr. Herrien's attorney submitted a Pre-Hearing

Memorandum advising the ALJ that Mr. Herrien was a Navy veteran with a 40% service-

connected disability rating from the VA. R. 104. In addition, the ALJ was advised that Mr.

Herrien had a 100% federal disability rating from the Office of Personnel Management (OPM).

*Id.* However, no records regarding either disability determination were proffered by Mr.

Herrien. R. *passim.* At the hearing, Mr. Herrien testified that he was "receiving disability from

OPM and also disability from the Department of Veterans Affairs." R. 22. However, neither

Mr. Herrien's counsel nor the ALJ followed up on that testimony to develop the record. *Id.*

With the exception of Dr. Kerner's reference in a letter and treatment note dated July 6, 2010

regarding Mr. Herrien's VA disability benefits claim,[10] R. 422, 452, the remainder of the record

is silent with respect to the two federal agency disability determinations.[11] Consequently, there

was little evidence for the ALJ to weigh in this regard. This does not end the inquiry, however.

---

[10] The Court notes that, while Dr. Kerner's July 6, 2010 letter was addressed to the Social Security Administration, the letter concludes "I hope this assist [sic] you in the evaluation of his veteran's benefits claims." R. 422. Further, Dr. Kerner's treatment record of the same date states: "[Mr. Herrien] has asked me to provide him a letter to the Veterans' Administration regarding his disability status." R. 452.

[11] Health summary medical records from the VA which identify conditions for which Mr. Herrien received treatment contain the notation "SC LESS THAN 50%." R. 292-297. While this might indicate the presence of a service connected disability of less than 50%, no explanation is provided.

In November, 2012 the Fourth Circuit decided *Bird v. Commissioner of Social Security,* 699 F.3d 337 (4th Cir. 2012), which addressed, *inter alia*, the weight to be given by the Commissioner to a disability determination made by another governmental agency, in that case, the Department of Veterans Affairs. In *Bird*, the VA determined that a Vietnam War Veteran suffered from Post-Traumatic Stress Disorder and labeled him 100% disabled. *Id.* at 339. The district court upheld the ALJ's finding that the VA's rating decision was not relevant to Bird's disability determination, but the Fourth Circuit reversed. *Id.* at 343-344. While acknowledging that another agency's disability determination is not binding on the SSA, the Fourth Circuit noted that "at least some weight" should be afforded to the VA disability determination, because both the VA and SSA "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* at 343. Because both agencies evaluate a claimant's ability to work in the national economy, focus on a claimant's functional limitations and require extensive medical documentation in support of a claim, the Court reasoned that "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Finding that "another agency's disability determination cannot be ignored and must be considered," the Court held that the Commissioner "must give substantial weight to a VA disability rating" and may only give less weight "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

In his response to Plaintiff's Motion to Supplement the Record, the Commissioner contends that the *Bird* decision has no bearing on the Court's consideration here because the administrative record contains scant information regarding the substance of the VA's disability determination. Defendant's Response to Plaintiff's Motion to Supplement the Record, at p. 1-2. While it is certainly correct that the record is scant, under the precedent in this Circuit it was the

ALJ's duty to fully and fairly develop the record. *Cook*, 783 F.2d at 1173. While this does not mean that the ALJ was "required to act as plaintiff's counsel," the duty to develop the record remained with the ALJ, and the proper inquiry, then, "is whether the record contains sufficient evidence" of, in this case, the VA's and OPM's disability determinations. *Loving v. Astrue*, 2012 WL 4329283, at * 5 (E.D.Va. 2012) (citations omitted). A thorough review of the record clearly demonstrates that it does not.

The ALJ was advised by Mr. Herrien's counsel prior to the hearing that Mr. Herrien had a 100% federal disability retirement rating from OPM and a 40% service-connected disability rating from the VA. R. 104. In addition, during the hearing Mr. Herrien testified that he was receiving disability payments from OPM and the VA. R. 22. Despite his counsel's failure to proffer more evidence regarding these disability determinations or elicit further testimony from M. Herrien at the hearing, it nonetheless remained the duty of the ALJ to inquire into the issues necessary to adequately develop the record, since he cannot rely on the evidence submitted by the claimant if the evidence is inadequate. *Cook*, 783 F.2d at 1173. The evidence here was clearly inadequate. Under the principle promulgated by the Fourth Circuit in *Bird*, evidence of another agency's disability determination is "highly relevant" and must be given substantial weight unless the record clearly establishes that a lesser weight is appropriate. 699 F.3d at 343. Without a developed record, there is insufficient evidence to determine what weight OPM and the VA's disability determinations merit.

Other courts have reached the same result in cases with similar facts. In *Worthington v. Astrue*, 2012 WL 4026067, at *4 (E.D.N.C. 2012), the court reversed and remanded the Commissioner's denial of disability benefits where the claimant testified at the administrative hearing that she was receiving disability payments from the State of North Carolina. As the

court noted:

> While it appears that plaintiff, who was represented by counsel of record at the administrative hearing, failed to submit any notice or decision of disability from the issuing agency, the fact that she was receiving state disability was noted in the record, (citation omitted), and after plaintiff testified that she was receiving state disability benefits, the ALJ should have further developed the record on this point to the extent necessary to evaluate this evidence as required by SSR 06-03p.

*Id.* The court then concluded: "The ALJ's failure to further develop the record as necessary to evaluate plaintiff's testimony that she was receiving state disability benefits was error requiring remand." *Id. See also Weers v. Barnhart*, 2002 WL 69512, at *2 (D. Kan. 2002) (Where only evidence of VA disability rating was claimant's own testimony at administrative hearing, ALJ erred in failing to discuss what weight or consideration, if any, he gave to such evidence).

Similarly here, where Mr. Herrien raised the issue of his disability determinations made by two other federal agencies, it was error for the ALJ not to further develop the record, especially in light of the Fourth Circuit's directive in *Bird* that such determinations are to be given substantial weight. As a result, remand is required, and on remand the ALJ must give substantial weight to both the VA and the OPM disability determinations, or explicitly detail the reasons for deviating from the VA's and OPM's outcomes.[12] *See Bird,* 699 F.3d at 343 ("an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate").

## VII. RECOMMENDATION

For the foregoing reasons, the Court recommends that the defendant's motion for summary

---

[12] Because the ALJ must conduct a reweighing of the evidence on remand, this Court will not discuss whether substantial evidence supported the ALJ's weight assigned to the opinions of Mr. Herrien's treating physicians, Drs. Grant and Kerner, and the ALJ's RFC determination, as well as whether the ALJ properly evaluated Mr. Herrien's credibility with respect to his statements concerning the intensity, persistence and limiting effects of his symptoms.

judgment be DENIED, the plaintiff's motion for summary judgment be GRANTED to the extent it seeks reversal and remand of the Commissioner's decision, and DENIED to the extent that it seeks entry of an order directing the award of benefits, and the Commissioner's decision be VACATED and REMANDED for further proceedings consistent with this Report.

## VIII. REVIEW PROCEDURE

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(2).

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 20, 2013